Tagged Opinion

**ORDERED in the Southern District of Florida on**  MAR -7 2008



Paul G. Hyman, Chief Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**

IN RE:                                    **CASE NO.:07-17224-BKC-PGH**
                                          **CHAPTER 7**

**Robert N. Patterson**
**and Angelia M. Patterson,**
**DEBTORS.**
_____/

## ORDER DISMISSING CHAPTER 7 CASE UNLESS DEBTORS MOVE TO CONVERT TO CHAPTER 13 WITHIN TEN DAYS OF ENTRY OF THIS ORDER

**THIS MATTER** came before the Court for hearing on December 19,

2007, upon the United States Trustee's ("UST") *Motion to Dismiss*

*Pursuant to 11 U.S.C. Section 707(b)(1) Based on Presumption of*

*Abuse Arising under 11 U.S.C. § 707(b)(2) and Abuse Arising under*

*11 U.S.C. § 707(b)(3)* ("Motion"). The Motion seeks dismissal of the

above referenced Chapter 7 case on two separate bases, § 707(b)(2)

and § 707(b)(3). To facilitate the determination of this matter,

the Court bifurcated the Motion and advised the parties that it

would first consider dismissal pursuant to § 707(b)(2), and then

consider dismissal pursuant to § 707(b)(3) only if necessary. The

Court entered a briefing order setting deadlines for the parties to submit a response, a reply, and a joint stipulation of facts relevant to the issues raised by § 707(b)(2).

As directed by the briefing order, Robert Patterson and Angelia Patterson (collectively, the "Debtors") filed their *Response to U.S. Trustee's Motion to Dismiss* ("Response") on January 31, 2008. Sworn affidavits signed by each Debtor were attached to the Debtors' Response. On February 14, 2008, Debtors and the UST filed a Joint Statement of Uncontested Facts ("Joint Stipulation"). On February 15, 2008, the UST filed a *Reply Brief to Debtor's Response* ("Reply").

On February 15, 2008, Debtors also filed a Notice of Filing of documents and a second sworn affidavit of Angelia Patterson in support of Debtors' Response, wherein Angelia Patterson attested that the attached statements and canceled checks were true and correct copies of documents the Debtors received and maintained in the normal course of their financial affairs. On February 22, 2008, Debtors filed a *Motion For Leave to File Sur-Reply to United States Trustee's Reply* ("Motion to File Sur-Reply"). Subsequent to the Court's February 25, 2008 entry of the *Order Granting Debtors' Motion to File Sur-Reply*, the UST filed a *Limited Objection to Debtor's Motion to File Sur-Reply* ("Limited Objection").[1] The Court

---

[1]The UST's Limited Objection maintains that the UST made no new additional arguments as suggested by Debtors in their Motion to File Sur-Reply. The UST's Limited Objection also states that Debtors' Sur-Reply

herewith overrules UST's Limited Objection as moot.

For the reasons stated below, the Court will grant the UST's

Motion to Dismiss based upon the Debtors' failure to rebut the

presumption of abuse pursuant to § 707(b)(2)(B).

## STIPULATED FACTS

1.  The Debtors commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on September 4, 2007.

2.  On the same date, Debtors filed their schedules, a statement of financial affairs, and a statement of current monthly income and means test calculation ("Official Form 22A" or "Means Test").

3.  The Debtors' Official Form 22A indicates that:

    a)  Debtors' current monthly income is $9,504.83 and their annualized income is $114,057.96.

    b)  Debtors claim a household size of three persons.

    c)  Debtors' annualized income of $114,057.96 was greater than the applicable state median income of $52,648.00 for a family of three residing in Florida at the time of the bankruptcy filing. Therefore, the Debtors were required to complete, and did complete, the remainder of Official Form 22A.

    d)  Debtors' Official Form 22A indicates at Line 50 and 51 that the Debtors have monthly disposable income under § 707(b)(2) in the amount of $2,409.31 and 60-month disposable income under § 707(b)(2) in the amount of $144,558.60.

    e)  The Debtors checked the box on Official Form 22A indicating that the presumption of abuse arises under 11 U.S.C. §707(b)(2).

    f)  The Debtors listed "Other Expenses" in the amount of

raises no new argument to establish the existence of special circumstances to rebut the presumption of abuse.

3

$3,136.72 on Official Form 22A, Line 56 which amount included:

| | |
|---|---|
| Add'l Education/Living Exp for Daughter | $ 400.00 |
| Non Reimbursed Employee Expense | $ 400.00 |
| Student Loans | $ 2,181.72 |
| Storage Unit | $ 155.00 |

4.  Debtors listed non-priority unsecured debts totaling $392,591.18 on Schedule F. Of this amount, $288,696.44 is related to student loans.[2]

5.  On November 16, 2007, upon request of the UST, the Debtors provided the UST with the following information related to the student loans listed on Schedule F. The Debtors also provided this information to the Court as an exhibit to the Debtors' Response:

a)  Great Lakes, 2xxxxxxxxxxxxxx; balance as of 6/14/07 $33,409.88

b)  Great Lakes, 1xxxxxxxxxxxxxx; balance as of 7/30/07 $25,322.96[3]

c)  Sallie Mae, 9xxxxxxxxx; balance as of 7/30/07 $205,983.22

7.  The Debtors listed their aggregate student loan payment in the amount of $2,181.72 as an additional monthly expense on Line 56 of Official Form 22A, and as a monthly expense on Schedule J.

8.  Pursuant to the January 28, 2008 Affidavit of Angelia Patterson ("First Angelia Patterson Affidavit"), the Great Lakes loan in the name of Angelia Patterson was consolidated in approximately 1996 and cannot be consolidated again. Angelia Patterson used the proceeds from this loan to fund her education and living expenses while she obtained a Bachelor of Science degree from Jacksonville University.

9.  Pursuant to the First Angelia Patterson Affidavit, the Sallie

---

[2] The Court notes that Debtors' Response states that the Debtors have three student loans outstanding in the total amount of $263,551.44, said amount is lower than the amount listed for student loans outstanding on Schedule F as stipulated by the parties.

[3] The Joint Stipulation notes that the Affidavit of Angela Patterson filed with Debtors' Response reflects an updated outstanding balance of $24,158.34 for this loan account. The Court notes that balance on this loan is also scheduled as $24,158.34 on Debtors' Schedule F.

Mae loan in the name of Angelia Patterson was consolidated in approximately 1999 and cannot be consolidated again. Angelia Patterson used the proceeds from this loan to fund her education and living expenses while she obtained a Juris Doctor degree from the Thomas M. Cooley Law School.

10. As reflected on Debtors' Schedule I, Mrs. Patterson now works for Legal Aid of Palm Beach County in furtherance of the public welfare in the juvenile program.

11. Pursuant to the January 28, 2008 Affidavit of Robert Patterson, the Great Lakes loan in the name of Robert Patterson was consolidated in approximately 2006. The Debtors used the proceeds from this loan to fund their daughter's education expenses while she attends Michigan State University. Her approximate graduation date is May 2008.

12. The Debtors have determined that the subject student loans are not capable of further consolidation or deferral.

13. The Debtors are not aware of any hardship that would otherwise justify the discharge of the subject student loans. It is undisputed that the subject student loans are nondischargeable in the pending bankruptcy.

14. The Debtors are required to pay the subject student loans and continue to do so post-petition as part of their monthly budget. The Schedules and Official Form 22A accurately lists the Debtors' aggregate income as of the petition date and indicates that they have no other sources of income to pay the student loan debt.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 (b). This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(1) and (b)(2)(A) and (O).

The UST seeks dismissal of this case pursuant to 11 U.S.C. § 707(b). This Court previously discussed the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act's ("BAPCPA") extensive modifications to 11 U.S.C. § 707 (b) in *In re Henebury*, 361 B.R.

5

595 (Bankr. S.D. Fla. 2007). As explained in *Henebury*, "[t]he pre-BAPCPA version of § 707(b), contained in a single paragraph, was replaced in BAPCPA with seven complex sub-parts." *Id.* at 601. Pre-BAPCPA standing to bring a § 707(b) motion to dismiss was explicitly denied to anyone but the United States Trustee or the court upon its own motion. Post-BAPCPA standing to bring a § 707(b) motion to dismiss is now conferred upon any party in interest. *Id.* "The § 707(b) threshold for dismissal has been changed from 'substantial abuse' [pre-BAPCPA]. . . to 'abuse' under BAPCPA." *Id.* "The abuse that concerned Congress was debtors receiving a full discharge under Chapter 7 when they had regular income that could be used to repay some portion of their unsecured debt in a Chapter 13 plan." *In re Singletary*, 354 B.R. 455, 459 (Bankr. S.D. Tex. 2006).

New subsections 707(b)(2) and (3) provide two methods for determining whether or not there is abuse under § 707(b)(1). *Singletary*, 354 B.R. at 459. Section 707(b)(2) provides the formula for the means test which all debtors are required to complete. *Henebury*, 361 B.R. at 601. Section 707(b)(2) creates a statutory presumption that it would be abusive to grant Chapter 7 relief to any debtor who "fails" the means test. *Id.* "Thus pre-BAPCPA § 707(b)'s 'presumption in *favor* of granting the relief requested by the debtor' has been removed, and been replaced with post-BAPCPA § 707(b)(2)'s presumption of abuse *against* debtors who, as determined

6

by the means test, have sufficient monthly disposable income to repay a portion of their unsecured debts." *Id.* (emphasis added). The statutory presumption of abuse arises if the debtor's monthly disposable income under the means test . . .

> multiplied by 60 is not less than the lesser of—
>
> > (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or
> >
> > (II) $10,950.

11 U.S.C. § 707 (b) (2) (A) (i).

If the presumption of abuse under the means test does not arise or is rebutted, courts may still dismiss a Chapter 7 case pursuant to section 707(b)(3), if the court determines that the debtor filed the petition in bad faith or if the totality of circumstances of the debtor's financial situation demonstrates abuse.

In this case, the Debtors' Means Test revealed that a presumption of abuse arose pursuant to 11 U.S.C. § 707 (b)(2)(A)(i) because the Debtors' § 707(b)(2) 60-month disposable income in the amount of $144,558.60 exceeded the $10,950.00 threshold that triggers the presumption under the statute. By checking the box on Line 52 of the Means Test, the Debtors acknowledged that the deduction of applicable standard expenses from their income left sufficient disposable monthly income to raise a presumption of abuse. However, the Debtors attempted to rebut the presumption of

7

abuse by listing additional expense claims in Part VII of their Means Test. The additional monthly expenses listed by the Debtors, if allowed, would produce negative monthly disposable income of $727.41 on the Debtors' Means Test. The Debtors contend that these additional expenses should be allowed as deductions from their current monthly income pursuant to § 707(b)(2)(B)(i), because special circumstances exist to justify these additional expenses for which there is no reasonable alternative. The UST objects to the allowance of the additional monthly expenses on the Debtors' Means Test arguing that the Debtors fail, both procedurally and substantively, to establish special circumstances to the extent such special circumstances justify additional expenses for which there is no reasonable alternative. *See* 11 U.S.C. § 707 (b)(2)(B).

## A. Section 707 (b) (2) (B)'s Procedural Requirements

Section 707(b)(2)(A)(i) creates a statutory presumption of abuse that may only be rebutted by demonstrating "special circumstances". *See* 11 U.S.C. § 707 (b)(2)(B)(i). To successfully demonstrate a special circumstance, the Debtors must fulfill both the procedural and substantive requirements of § 707(b)(2)(B). *In re Haman*, 366 B.R. 307, 312 (Bankr. D. Del. 2007). The procedural requirements to establish special circumstances are set forth in § 707 (b)(2)(B)(ii) and (iii) which state:

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--

8

> (I) documentation for such expense or adjustment to income; and
>
> (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
>
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

11 U.S.C. § 707(b)(2)(B)(ii) and (iii).

The UST maintains that the Debtors failed to provide any information to establish that special circumstances made the additional expenses necessary and reasonable until the UST asked for such information, and then only incomplete information was forwarded by Debtors' counsel via email. Notwithstanding, the Court notes that Debtors' Response included sworn affidavits by each Debtor regarding the balance due, monthly payment amounts, and use of the student loans. In addition, Debtors' Sur-Reply and Debtors' February 15, 2008 Notice of Filing contained additional documentation and explanations for the non student loan additional expenses. Although the preferable practice would have been for Debtors' counsel to supply the UST with _all_ the required information and affidavits at the time of filing Debtors' Means Test, the Court notes that the statute is silent as to when this information must be provided. Thus, the Court finds that the Debtors' affidavits and supplemental filing of additional documentation and explanations satisfies the procedural requirements of § 707(b)(2)(B)(ii) and (iii).

9

## *B. Section 707 (b)(2)(B)'s Substantive Requirements*

"The substantive requirements of § 707(b)(2)(B) are set forth in § 707(b)(2)(B)(i) and they require a debtor (1) to demonstrate 'special circumstances' that justify the additional expense or income adjustment; and (2) to demonstrate that there is 'no reasonable alternative' to making the additional expense or income adjustment." *In re Pageau*, 2008 WL 482354, at *3 (Bankr. D. N.H. Feb. 21, 2008). While the Code does not define special circumstances, "the statute provides two examples . . .: a serious medical condition and a call or order to active duty in the Armed Forces." *Id*. These examples, however, are merely illustrative, they are not exclusive. *In re Armstrong*, 2007 WL 1544591, at *2 (Bankr. N.D. Ohio May 24, 2007). "Analysis of special circumstances requires examination of the facts in each particular situation." *In re Vaccariello*, 375 B.R. 809, 813 (Bankr. N.D. Ohio 2007). In *Armstrong*, the court found that a "'special circumstance' as contemplated in § 707(b)(2)(B), is one that is out of the ordinary for an average family and leaves the debtor no reasonable alternative but to incur the expense." *In re Armstrong*, 2007 WL 1544591, at *2 (determining that debtor couple's legal marital separation was a special circumstance justifying second household expense). In *Knight* the court explained that "[a] special circumstance is one that, if the debtor is not permitted to adjust her income or expenses accordingly, results in a demonstrable

10

economic unfairness prejudicial to the debtor." *In re Knight*, 370 B.R. 429, 437-438 (Bankr. N.D. Ga. 2007)(determining that a student loan may qualify as a special circumstance warranting inclusion as an expense).

In this matter, the Debtors contend that special circumstances justify the additional expenses listed on the Debtors' Means Test for a storage unit, unreimbursed expenses for food while Mr. Patterson is away from home as a truck driver, the living expenses of the Debtors' adult daughter who is attending college in Michigan, and student loans the proceeds of which were used for both Mrs. Patterson's education and the Debtors' adult daughter's college expenses. As more fully discussed below, the Court finds that Debtors failed to establish special circumstances to justify the deduction of all of the additional listed expenses on their Means Test, and therefore the Debtors have not met their burden to rebut the presumption that the granting of Chapter 7 relief would be abusive.

1.  *The Storage Unit and Mr. Patterson's Food Expenses*

"The means test is the embodiment of Congress' intent 'that there be an easily applied formula for determining when the Court should presume that a debtor is abusing the system by filing a Chapter 7 petition.'" *Henebury*, 361 B.R. at 603 (*quoting In re Fowler*, 349 B.R. 414, 419 (Bankr. D. Del. 2006)). BAPCPA "in general, and the 'means test' in particular, were enacted ' . . .

11

to insure that those who can afford to repay some portion of their unsecured debts [are] required to do so.'" *In re Armstrong*, 370 B.R. 323, 328 (Bankr. E.D. Wash. 2007)(citations omitted). Other policy rationales put forward for the means test include judicial efficiency, reducing administrative complexity, removing judicial discretion, and relieving courts of the obligation to make subjective judgments regarding reasonable expenses by creating a presumption to ensure that debtors repay the maximum they can afford. *See In re Mullaly*, 2007 WL 4556680, at *3 (Bankr. S.D. Fla. Dec. 19, 2007). By requiring debtors to use National and Local Standards as objectively reasonable amounts for food, housing, transportation and other categories of expenses, the means test attempts to level the playing field by specifying the reasonable allowable expenses for similarly situated debtors based upon the size of their family and the place that they live.

In this case, the Debtors listed additional monthly expenses of $155.00 for the rental of a storage unit and $400.00 for Mr. Patterson's unreimbursed food expense when he is on the road working as a truck driver. The Debtors maintain that these expenses should be allowed to rebut the presumption of abuse based upon the existence of special circumstances. The UST argues in opposition that the National and Local Standards required to be used for the Means Test are adjusted for a family of three people irrespective of where they live or how they eat. The Court agrees.

As to the storage unit expense, the Debtors' Sur-Reply explains that in 2004 the Debtors moved from a three bedroom home with full basement in Michigan into a 1200 square foot apartment in Florida. The Sur-Reply states that the Debtors

> store all of the items that they previously kept in the basement of the home in Michigan including furniture, holiday decorations, and items of sentimental value, such as a table and dresser that belonged to Mrs. Patterson's grandmother. It is necessary for the Debtors to maintain a unit to store their belongings for which they do not have any other place to otherwise store these items.

Sur-Reply at ¶11.

While the Court is sympathetic to the Debtors' desire to store their sentimental furniture and other belongings, the Court finds that the Debtors' desire to store these items is not a special circumstance such that its disallowance results in a demonstrable economic unfairness prejudicial to the Debtors. Indeed, were the Court to allow this additional expense, it would effectively condone an end run around the means test by increasing the allowable housing standard expense amounts. The Debtors' reasonable alternative to incurring the expense of a storage unit is to either keep their belongings in their apartment or sell them. Thus, based upon the Debtors having failed to establish a special circumstance for which there is no reasonable alternative, the Court must disallow the $155.00 monthly expense for a storage unit on the Debtors' Means Test.

The Court also does not find the fact that Mr. Patterson works

13

as a truck driver to be a special circumstance that justifies an additional $400.00 per month for food expenses while he is away from home working as a truck driver. The Debtors' Sur-Reply states that Mr. Patterson is away from home Monday through Friday and that he is not reimbursed for food while he is on the road. The Court notes that the cost of Mr. Patterson's food is presumptively accounted for in the food, clothing, household supplies, personal care, and miscellaneous standard allowance of $1,368.00 for a family of three. Allowing this additional claimed food expense, while not reducing the standard allowance for the time Mr. Patterson is away from home, would be double dipping. Debtors maintain that Mr. Patterson's food expense is an unreimbursed business expense. The means test provides for deduction of ordinary and necessary business expenses on Line 4. However, this deduction is available only against income from the operation of a business, profession or farm. Mr. Patterson is a wage earner, he does not operate a business, profession or farm. Since the Debtors have not established that Mr. Patterson's employment as a truck driver is a special circumstance, this expense must be disallowed. Notwithstanding, the Court notes that Official Form 22A, Line 39 permits an additional combined food and clothing deduction not to exceed five percent of those combined allowances, provided the case trustee is provided with documentation that such additional amount claimed is reasonable and necessary. The Debtors did not list any

14

additional food expense on Line 39 of their Means Test even though they filed documentation that Mr. Patterson incurs additional food expenses while he is on the road. The combined applicable allowance for food and apparel at the time of filing was $1,041.00. The Court finds that an additional five percent allowance of $52.05 is reasonable and necessary. Therefore, although the additional listed expense of $400.00 for Mr. Patterson's food is disallowed because the Debtors have not established that Mr. Patterson's employment as a truck driver is a special circumstance, the Court finds it reasonable to allow an additional expense deduction of $52.05 on Official Form 22A, Line 39 for Mr. Patterson's additional food expense.

2.   *Adult Daughter's Living Expenses and Student Loan*

The Debtors listed additional monthly expense of $400.00 for their adult daughter's living expenses while she attends college in Michigan. The Debtors also listed student loans with aggregate monthly payments in the amount of $2,181.72. The aggregate monthly payment for student loans represents the combined payment for three separate loans. Each of the loans have been consolidated and may not be consolidated again. The proceeds of two of these loans were used to fund Angelia Patterson's undergraduate and graduate education. The proceeds of the third loan has been used to fund the education of the Debtors' adult daughter. While it may be laudable for the Debtors to support their adult daughter's education, "it

15

cannot be justified in the bankruptcy context. It forces the debtors' creditors to support the debtors' adult children." *In re Siemen*, 294 B.R. 276, 279 (Bankr. E.D. Mich. 2003). "[C]ourts generally agree that educational expenses for adult children are discretionary, and are not expenses that should be foisted upon a debtor's pre-petition creditors." *In re Straub*, 256 B.R. 567, 571 (Bankr. M.D. Pa. 2000). *See also United States Trustee v. Harrelson*, 323 B.R. 176 (W.D. Va. 2005)(finding debtors have no duty to pay for adult child's college expenses); *In re Richmond*, 144 B.R. 539, 542 (Bankr. W.D. Okla. 1992)("debtors' unsecured creditors should [not] be required to contribute to the voluntary support of family members who are not dependents of the debtors"). This consensus is unchanged under BAPCPA. *In re Pfahler*, 2007 WL 2156401 (Bankr. N.D. Ohio July 26, 2007); *In re Mattingly*, 2007 WL 1830805 (Bankr. S.D. Iowa June 22, 2007). An adult child attending college is not a special circumstance that is out of the ordinary for an average family which leaves the Debtors no reasonable alternative but to incur the expense. Absent evidence that the Debtors' adult daughter is chronically ill or disabled as contemplated by the allowance for continued contributions for the care of family members on Official Form 22 A at Line 35, the Court must disallow the listed expense of $400.00 per month for Debtors' adult daughter's living expenses and must also disallow the expense of $287.94 per month for servicing the student loan that funds

16

their adult daughter's education.

## C.  *Debtors Fail to Rebut the Presumption of Abuse*

As a consequence of the Court's determinations regarding the Debtors' additional listed expenses, the Debtors fail to rebut the presumption that granting them Chapter 7 relief would be abusive. The additional expense allowance for food and clothing in the amount of $52.05 on Line 39 of the Debtors' Means Test reduces the Debtors' monthly disposable income to $2,357.26 at Line 50 of their Means Test. As discussed above, the Court disallowed the following additional expenses listed by the Debtors in Part VII of their Means Test: $155.00 for the storage unit, $400.00 for Mr. Patterson's additional food expense, $400.00 for the Debtors' adult daughter's living expenses, and $287.94 for the student loan whose proceeds are used for the adult daughter's education. Therefore, the Debtors' 60-month disposable income for purposes of § 707(b)(2) is $27,808.88 which exceeds the $10,950.00 threshold that triggers the presumption of abuse. Therefore, the Court will grant the UST's Motion. However before dismissing the Debtors' Chapter 7 case, the Court will allow the Debtors to move to convert their case to a case under Chapter 13 within ten days of entry of this order.

Since the Debtor's 60-month disposable income exceeds the threshold that triggers the presumption of abuse, it is unnecessary for the Court to reach the issue of whether Angelia Patterson's student loans constitute special circumstances to the

17

extent that they should be allowed as additional expenses to rebut the presumption of abuse. The Court notes however that there is a developing body of case law regarding this issue with the decisions going both ways. *See e.g. In re Delbecq*, 368 B.R. 754 (Bankr. S.D. Ind. 2007)(finding that debtor's student loan was a special circumstance sufficient to rebut the presumption of abuse); *In re Templeton*, 365 B.R. 213 (Bankr. W.D. Okla. 2007)(determining that debtor's student loans constitute special circumstance for which the debtor had no reasonable alternative because they were non-dischargeable, and could not be consolidated or deferred); *In re Robinette*, 2007 WL 2955960 (Bankr. N.D. Ohio 2000) (finding student loan expense a special circumstance because there is no reasonable alternative). *But cf. In re Vaccariello*, 375 B.R. 809, 816 (Bankr. N.D. Ohio 2007)("It cannot be argued that having a student loan is rare or unusual; therefore, debtors' obligation to repay their student loans, standing alone, cannot constitute special circumstances."); *In re Lightsey*, 374 B.R. 377, 382 (Bankr. S.D. Ga. 2007)(Section 707's special circumstances may apply if repayment of student loans becomes onerous due to catastrophic illness, military deployment or similar post-contractual misfortunes but not because a student loan is a non-dischargeable debt); *In re Pageau*, 2008 WL 482354 (Bankr. D.N.H. Feb. 21, 2008)(determining that debtor's student loan should not be included as an additional expense on the means test. It is not the

18

obligation to repay a loan that qualifies such an expense as a special circumstance but rather it is the circumstances that led to incurring the loan that must be special and justify inclusion on the means test. Educational loans incurred in pursuit of education or training that is necessitated by permanent injury, disability or an employer closing might constitute special circumstances because such events are outside the control of the debtor as are the two examples in the statute).

## CONCLUSION

For the reasons stated above, the Court finds that the Debtors failed to establish special circumstances that would allow the additional claimed expenses for the storage unit, Mr. Patterson's additional food expense, or for the Debtors' adult daughter's living and educational expenses. Therefore, the Debtors have not met their burden to rebut the presumption of abuse that arises under 11 U.S.C. § 707(b)(2). The Court grants the UST's Motion and will dismiss this case unless the Debtors move to convert this case to a case under Chapter 13 within ten days of entry of this order.

## ORDER

The Court, having heard the argument of counsel, reviewed the applicable law, the submissions of the parties, and being otherwise fully advised in the premises does hereby:

**ORDER AND ADJUDGE** that the UST's Motion is **GRANTED** based upon

19

Debtors failure to rebut the presumption of abuse arising under 11 U.S.C. § 707(b)(2). The above-captioned case shall be dismissed within ten days following entry of this Order unless Debtors move to convert this case to one under Chapter 13 within said ten days.

### ###

Copies Furnished To:

Heidi Feinman, Esq.,
AUST

Craig I. Kelley, Esq.
Debtors Counsel